UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD DZIONARA-NORSEN,<br><br>                                Plaintiff,<br><br>-against-<br><br>COUNTY OF MONROE, TODD BAXTER, BRETT KIRKPATRICK, DAVID GERTIN,<br><br>                                Defendants. | CASE NO.: 21-CV-6715<br><br>COMPLAINT |

Plaintiff, by his attorneys, ROTH & ROTH, LLP and EASTON THOMPSON KASPAREK SHIFFRIN LLP, complaining of the defendants, respectfully allege as follows:

## I.  PRELIMINARY STATEMENT

1. This is a civil rights action seeking damages for Defendants' violations of Plaintiff Richard Dzionara-Norsen's civil rights on November 25, 2020 under the Federal Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, ("Section 504"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et. seq.* ("NYSHRL"), 42 U.S.C. § 1983 ("Section 1983"), and State common law.

2. Mr. Norsen is 30 years old. He is a person with a disability. Mr. Norsen is diagnosed with autistic spectrum disorder, major depressive disorder, and anxiety disorder. The Defendants were aware of these disorders.

3. On November 25, 2020, Mr. Norsen was incarcerated at the Monroe County Jail, when he was brutally beaten by Defendants BRETT KIRKPATRICK and DAVID GERTIN in retaliation for him not demonstrating the level of deference and subservience they subjectively expected him to show them. Plaintiff's perceived disrespect was due to his disability.

4. At not time prior to the force used against him was Mr. Norsen objectively threatening to KIRKPATRICK or GERTIN in any way, and they failed to recognize that Mr. Norsen's response was typical for a person with autism.

5. The force used against Mr. Norsen was malicious and sadistic, unreasonable under the circumstances, shocks the conscious, and constitutes discrimination by reason of his disability.

## II.   PARTIES

6. Plaintiff RICHARD DZIONARA-NORSEN is a Citizen of the United States and is a qualified individual with a disability under federal law.

7. Defendant TODD BAXTER ("Sheriff Baxter" or "BAXTER") was, at all times relevant herein, the duly elected Sheriff of the County of Monroe. At all relevant times, Defendant BAXTER was acting within the scope of his employment and under color of state law. He is sued in his individual and official capacity.

8. BRETT KIRKPATRICK, DAVID GERTIN, were, at all times relevant to this Complaint, Deputy Sheriffs with the Monroe County Sheriff's Office ("MCSO"), assigned to the Jail Bureau. At all relevant times, these defendants were acting within the scope of their employment with the County and under Sheriff BAXTER and acting under color of state law. They are sued in their individual capacities. They are referred to collectively as "the Sheriff's Deputies."

9. BAXTER is responsible for the training, supervision and discipline of the Defendant Sheriff's Deputies under state law.

## II.  JURISDICTION, VENUE AND CONDITIONS PRECEDENT

10. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, and 12102, the Fourth and Fourteenth Amendments to the United States Constitution, and the laws of the State of New

York. Jurisdiction is conferred upon this court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions. This Court has jurisdiction over the supplemental claims arising under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a).

11. Venue is proper for the United States District Court for the Western District of New York, pursuant to 28 U.S.C. § 1391(a), (b) and (c) and § 1402(b) because the claims arose in this district

12. Plaintiff filed a timely Notice of Claim against the County in compliance with the Municipal Law § 50.

13. The County waived its right to hold a 50-h hearing.

14. More than thirty (30) days have elapsed since service of said Notice of Claim was filed and the City and County have failed to pay or adjust the claim.

15. This action is being brought within a year and 90 days of the event that gives rise to Plaintiff's causes of action under New York State law and Plaintiff has complied with all of the statutory prerequisites for bringing this action.

### III.  FACTUAL ALLEGATIONS

#### A. Plaintiff's Disability

16. Plaintiff has a noticeable mental disability.

17. Plaintiff has been diagnosed with autism spectrum disorder; obsessive compulsive personality disorder; anxiety disorder and major depressive disorder.

18. Plaintiff had been confined in the Monroe County Jail for many months prior to the November 25, 2020 incident, and Defendants knew or should have known of his disability.

19. Plaintiff is a qualified individual with a disability, as defined by the ADA, 42 U.S.C. § 12102, and Section 504, 29 U.S.C.A. § 794(a). He also has a disability as defined by N.Y. Exec. Law § 292 (21), the NYSHRL.

20. Because of his disabilities, Plaintiff was placed in the "Constant Supervision" area of the jail for his own protection.

21. The Defendants were aware of Plaintiff's diagnoses and disability.

### B. Facts Common to All Causes of Action.

22. On November 25, 2020, Plaintiff was incarcerated at the Monroe County Jail.

23. For several months prior to November 25, 2020, Plaintiff had been incarcerated at the Jail as a pretrial detainee.

24. On November 25, 2020, at approximately 3:50 p.m., KIRKPATRICK removed Plaintiff from his Constant Supervision cell to speak with a mental health counselor in the reception annex.

25. KIRKPATRICK and GERTIN knew that Plaintiff had never acted aggressively or been in any physical altercation during the several months he had been incarcerated at the Jail.

26. In fact, on the day of the incident, jail staff were planning to permit Plaintiff to use the free telephone in central booking as a reward for his good behavior.

27. Plaintiff is only 5'9" tall and weighs approximately 140-144 pounds.

28. GERTIN is 5'11" and weighs approximately 220 pounds.

29. KIRKPATRICK is 6'2" and weighs approximately 200 pounds.

30. After Plaintiff exited his cell to speak with the mental health counselor, upon information and belief, KIRKPATRICK ordered Plaintiff to stop and return to his cell.

31. Upon information and belief, Plaintiff did not display the degree of deference and subservience KIRKPATRICK subjectively expected from him.

32. KIRKPATRICK felt disrespected because Plaintiff did not display the degree of deference and subservience KIRKPATRICK subjectively expected from him.

33. Upon information and belief, despite knowing of Plaintiff's disability, KIRKPATRICK expected Plaintiff to comply with his orders and react in the same manner as an individual who did not suffer from Plaintiff's disability.

34. As Plaintiff approached the nurse's station in the reception annex, upon information and belief, GERTIN ordered Plaintiff to stop and return to his cell.

35. Upon information and belief, Plaintiff did not display the degree of deference and subservience GERTIN subjectively expected from him.

36. GERTIN felt disrespected because Plaintiff did not display the degree of deference and subservience GERTIN subjectively expected from him.

37. Upon information and belief, despite knowing of Plaintiff's disability, GERTIN expected Plaintiff to comply with his orders and react in the same manner as an individual who did not suffer from Plaintiff's disability.

38. In retaliation for Plaintiff not displaying the degree of deference and subservience he expected, GERTIN physically seized Plaintiff and slammed his body against the wall, without cause or justification.

39. KIRKPATRICK immediately ran over and punched Plaintiff in the right side of his face / head at least four times, without warning, cause or justification.

40. As a result of KIRKPATRICK punching Plaintiff in the right side of his face/head, the left side of Plaintiff's face/head was repeatedly slammed into the end of an open metal door.

41. GERTIN had the time and opportunity to prevent KIRKPATRICK from punching Plaintiff in the head at least four times, but he failed to do so.

42. When KIRKPATRICK punched Plaintiff in the face at least four times, he was restrained by GERTIN and was not a threat to GERTAIN, KIRKPATRICK or any other person.

43. It was objectively unreasonable for KIRKPATRICK to use any force against Plaintiff.

44. It was objectively unreasonable for KIRKPATRICK to punch Plaintiff in the face at least four times.

45. After KIRKPATRICK punched Plaintiff in the face at least four times, GERTIN and KIRKPATRICK slammed his body onto the ground, without cause or justification, causing Plaintiff physical pain and injuries.

46. After KIRKPATRICK and GERTIN slammed Plaintiff on the ground, they struck him numerous times in the head and/or body.

47. After Plaintiff was slammed to the ground, KIRKPATRICK and GERTIN placed their full body weight on his back and legs, without cause or justification, causing Plaintiff physical pain and injuries.

48. All of the force used against Plaintiff was objectively unreasonable, as he is only 5'9" tall and approximately 140-144 pounds.

49. GERTIN weighed 80 pounds more than Plaintiff, and KIRKPATRICK weighed 60 pounds more than Plaintiff.

50. GERTIN and KIRKPATRICK acted maliciously and sadistically for the very purpose of causing harm to Plaintiff.

51. GERTIN and KIRKPATRICK maliciously and sadistically attacked Plaintiff in retaliation for Plaintiff acting in a manner consistent with his disability.

52. After the incident, Plaintiff was taken to the emergency room and diagnosed with multiple facial fractures.

53. Plaintiff also suffered injuries to his right ear, scrapes and cuts on his head and face, and injuries and bruising throughout this body.

54. In an attempt to justify the unlawful actions of GERTIN and KIRKPATRICK, BAXTER held a sham disciplinary hearing against Plaintiff, in which Plaintiff was found guilty of allegedly being "disrespectful to authority."

55. As a result of being found "guilty" of being "disrespectful to authority" in the sham disciplinary hearing, Plaintiff was sentenced to 20 days in "punitive segregation" (i.e. solitary confinement) and fined $25.

56. In imposing discipline against Plaintiff, Defendants did not consider his disability.

57. The sham disciplinary hearing was conducted in a discriminatory manner and violated Plaintiff's rights.

58. KIRKPATRICK was also subjected to an internal affairs investigation regarding the force he used against Plaintiff.

59. The internal affairs investigation concluded that KIRKPATRICK was justified in using force against Plaintiff.

60. In finding that KIRKPATRICK was justified in using force against Plaintiff, internal affairs applied the incorrect legal standard.

61. In finding that KIRKPATRICK was justified in using force against Plaintiff, internal affairs considered that KIRKPATRICK subjectively felt disrespected by Plaintiff.

62. In finding that KIRKPATRICK was justified in using force against Plaintiff, internal affairs failed to consider whether KIRKPATRICK's actions were objectively reasonable under the totality of the circumstances.

63. In finding that KIRKPATRICK was justified in using force against Plaintiff, internal affairs did not consider Plaintiff's disability as part of the totality of the circumstances.

64. The internal affairs investigation concluded that KIRKPATRICK was justified in using force against Plaintiff, but the amount of force he used was excessive and unjustified.

65. KIRKPATRICK was only suspended for 20 days, and was permitted to use his banked vacation and/or sick time towards the suspension.

## VI.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
**Excessive Force**
*Pursuant to 42 U.S.C. § 1983*
**(Against GERTIN and KIRKPATRICK)**

66. All preceding and subsequent paragraphs are incorporated by reference.

67. Defendants used force against Plaintiff that was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted them.

68. Defendants used force against Plaintiff that was malicious and sadistic, and applied for the very purpose of causing harm.

69. KIRKPATRICK's use of force against Plaintiff shocks the conscious, because Plaintiff weighed, approximately 60 pounds less than KIRKPATRICK and approximately 80 pounds less than both GERTIN. When KIRKPATRICK punched him at least four times in the

face, he was detained by GERTIN—who weighed 80 pounds more than Plaintiff—and posed no threat to GERTIN, KIRKPATRICK or anyone else.

70. Defendants' actions towards Plaintiff constitute excessive force in violation of 4th, 8th and 14th Amendments of the United States Constitution and 42 U.S.C. § 1983.

71. Plaintiff did not pose any threat of physical harm to Defendants or anyone else when they used force against him.

72. Any threat perceived by Defendants was unreasonable, considering the fact that Plaintiff was much smaller than both GERTIN and KIRKPATRICK, and the fact that Defendants knew Plaintiff had no history of aggressive or violent behavior.

73. There was no need for Defendants to use any force against Plaintiff.

74. There was no need for KIRKPATRICK to punch Plaintiff in the face four times.

75. There was no need for Defendants to repeatedly strike Plaintiff after he was restrained on the ground.

76. The types and levels of force Defendants used against Plaintiff were in contravention of, or inconsistent with, related policies and/or training.

77. Defendants also failed to provide adequate training and supervision to administrators and deputies with respect to constitutional limits on the use of force and restraint and failed to provide adequate training and supervision to deputies with respect to the proper procedures to be followed in dealing with mentally disabled persons in need of medical or psychological treatment.

78. As a result of the acts and omissions of Defendants, Plaintiff was deprived of his federal, state, and/or other legal rights; caused Plaintiff bodily injury; short-term and long-term physical pain, psychological and/or emotional injury, and/or humiliation; exacerbated the

symptoms of his mental illness; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

79. The actions of the Defendants were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

80. Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful conduct and is entitled to damages and reasonable attorney's fees and costs in an amount to be determined by the Court.

### SECOND CLAIM FOR RELIEF
**Assault and Battery**
*Pursuant to New York State Law*.
**(Against GERTIN and KIRKPATRICK)**

81. All preceding and subsequent paragraphs are incorporated by reference.

82. By the aforedescribed conduct, GERTIN and KIRKPATRICK intentionally, willfully and maliciously battered Plaintiff when they, in a hostile and/or offensive manner struck Plaintiff without his consent and with the intention of causing harmful and/or offensive bodily contact to the Plaintiff and caused such battery.

83. At no point during the incident described herein did the circumstances necessitate or support the above applications of force utilized by GERTIN and KIRKPATRICK against Plaintiff.

84. The actions of the Sheriff's Deputies were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

85. Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful conduct and is entitled to damages, injunctive relief, and reasonable attorney's fees and costs in an amount to be determined by the Court.

## THIRD CLAIM FOR RELIEF
### Failure To Intervene
*Pursuant to 42 U.S.C. § 1983*
### (Against GERTIN)

86. All preceding and subsequent paragraphs are incorporated by reference.

87. GERTIN all had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by KIRKPATRICK.

88. GERTIN failed to intervene on Plaintiff's behalf despite having had a realistic opportunity to do so.

89. GERTIN failed to intervene on Plaintiff's behalf despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by his affirmative conduct.

90. As a result of the aforementioned conduct of GERTIN, Plaintiff's constitutional rights were violated.

91. Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

92. Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful conduct and is entitled to damages, injunctive relief, and reasonable attorney's fees and costs in an amount to be determined by the Court.

## FOURTH CLAIM FOR RELIEF
### Negligence
### (Against BAXTER)

93. All preceding and subsequent paragraphs are incorporated by reference.

94. Defendant BAXTER was negligent in the training, supervision and discipline of the Defendant Sheriff's Deputies, who were provided, upon information and belief, no training

11

for dealing with individuals who suffer from autism spectrum disorder or similar disabilities to those suffered by Plaintiff; or the training they were provided was inadequate.

95. BAXTER had a duty to ensure that his Sheriff's Deputies were properly trained in policing detainees who suffer from autism spectrum disorder and other similar mental health conditions.

96. BAXTER knew or should have known that the training he provided was inadequate.

97. BAXTER breached his duty to keep Plaintiff safe by failing to provide adequate training to his Sheriff's Deputies, including GERTIN and KIRKPATRICK, regarding policing individuals with autism spectrum disorder and other similar mental health conditions and disabilities.

98. Plaintiff's injuries were a direct and proximate result of BAXTER failing to adequately train his Sheriff's Deputies, including GERTIN and KIRKPATRICK, regarding policing individuals with autism spectrum disorder and other similar mental health conditions and disabilities.

99. BAXTER had a duty to ensure that his Sheriff's Deputies were properly trained in the lawful amount of force that is permitted to be used against detainees, and that Sheriff's Deputies are not permitted to use force against detainees because they subjectively felt disrespected.

100. BAXTER knew or should have known that the training he provided was inadequate, as, upon information and belief, Sheriff's Deputies often use force against detainees because they subjectively feel disrespected.

101. BAXTER breached his duty to keep Plaintiff safe by failing to provide adequate training and supervision to his Sheriff's Deputies, including GERTIN and KIRKPATRICK, regarding the fact that they are not permitted to use force against detainees because they subjectively feel disrespected.

102. GERTIN and KIRKPATRICK used force against Plaintiff because they subjectively felt disrespected.

103. BAXTER held a sham disciplinary hearing, in which Plaintiff was found guilty of being "disrespectful to authority", which "result[ed] in force used" against him by GERTIN and KIRKPATRICK. Thus, BAXTER blamed the victim, Plaintiff, finding that it GERTIN and KIRKPATRICK were justified in using force against him because they perceived his actions as being "disrespectful".

104. Plaintiff's injuries were a direct and proximate result of BAXTER failing to adequately train his Sheriff's Deputies, including GERTIN and KIRKPATRICK, regarding policing individuals who were not a danger to themselves or others but that Sheriff's Deputies perceived as being "disrespectful", or otherwise not displaying the degree of deference and subservience they subjectively expected from the detainee.

105. Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful conduct and is entitled to damages, injunctive relief, and reasonable attorney's fees and costs in an amount to be determined by the Court.

## FIFTH CLAIM FOR RELIEF
**Discrimination in violation of Title II of the Americans with Disabilities Act Pursuant to 42 U.S.C. § 12132 *et seq*.**
**(Against Defendant, COUNTY)**

106. All preceding and subsequent paragraphs are incorporated by reference.

107. Under Title II of the ADA, it is illegal for public entities to discriminate against qualified individuals with disabilities. Under 42 U.S.C. § 12132, "no qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."

108. At all times relevant to this action, Plaintiff suffered from autism spectrum disorder; obsessive compulsive personality disorder; anxiety disorder and major depressive disorder.

109. Plaintiff is a "qualified individual with a disability" under the ADA because his mental disabilities "substantially limits one or more major life activities," as defined by 42 U.S.C. § 12102(2).

110. Defendant COUNTY is a "public entity," as defined by 42 U.S.C. § 12131(1).

111. Defendant COUNTY unlawfully discriminated against Plaintiff in violation of the ADA by failing to accommodate Plaintiff's qualified disability during his incarceration.

112. Defendant COUNTY unlawfully discriminated against Plaintiff in violation of the ADA because of his disabilities and denied him the benefits of public services, programs and activities as a result of his disabilities by, among other things: failing to provide proper and reasonable training to MCSO Sheriff's Deputies regarding how to respond to persons with mental impairments; failing to respond reasonably in dealing with a mentally disabled person who was experiencing an episode of psychological distress; and by disciplining Plaintiff for actions related to his mental illness and imposing a punishment that was detrimental to his mental health..

113. Plaintiff was beaten by GERTIN and KIRKPATRICK as a result of his perceived "disrespect" toward them because of autism and other mental disorders, which constitutes a violation of Title II's general prohibition against discrimination on account of one's disability.

114. Plaintiff was subjected to discipline by the COUNTY as a result of his perceived "disrespect" towards GERTIN and KIRKPATRICK, which constitutes a violation of Title II's general prohibition against discrimination on account of one's disability.

115. By discriminating against Plaintiff, the COUNTY added an additional layer of punishment, injury, and indignity to the detention processes solely because of Plaintiff's disability. A person who does not have a disability would not otherwise have experienced this harm.

116. The acts and omissions of Defendants violated the ADA, which prohibits discrimination on the basis of physical and mental disability and protect persons such as Plaintiff from the type of injuries and damages set forth herein.

117. Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful and discriminatory conduct and is entitled to damages, injunctive relief, and reasonable attorney's fees and costs in an amount to be determined by the Court.

### SIXTH CLAIM FOR RELIEF
**Discrimination in violation of Section 504 of the Rehabilitation Act**
**(Title 29 U.S.C. § 794 *et seq*.)**
**(Against Defendant, COUNTY)**

118. All preceding and subsequent paragraphs are incorporated by reference.

119. Section 504 provides that it is illegal for "any program or activity receiving Federal financial assistance" to subject any "qualified individual with a disability" to discrimination under 29 U.S.C.A. § 794(a).

120. At all times relevant to this action, Plaintiff suffered from autism spectrum disorder; obsessive compulsive personality disorder; anxiety disorder and major depressive disorder.

121. Plaintiff is thus a "qualified individual with a disability" under Section 504, as defined by 29 U.S.C.A. § 705(20) and 42 U.S.C.A. 12102(2).

122. At all times relevant to this action, both Defendant COUNTY OF MONROE and their agency, the MCSO, received funding from the federal government of the United States and were "programs or activities," as defined by 29 U.S.C.A. § 794(b).

123. Defendant COUNTY OF MONROE unlawfully discriminated against Plaintiff in violation of Section 504 because of his disabilities and denied him the benefits of public services, programs and activities as a result of his disabilities by, among other things: failing to provide proper and reasonable training to MCSO Sheriff's Deputies regarding how to respond to persons with mental impairments; failing to respond reasonably in dealing with a mentally disabled person who was experiencing an episode of psychological distress; and by disciplining Plaintiff for actions related to his mental illness and imposing a punishment that was detrimental to his mental health..

124. By discriminating against Plaintiff, the COUNTY added an additional layer of punishment, injury, and indignity to the detention processes solely because of Plaintiff's disability. A person who does not have a disability would not otherwise have experienced this harm.

125. The acts and omissions of Defendants violated Section 504, which prohibits discrimination on the basis of physical and mental disability, and protect persons such as Plaintiff from the type of injuries and damages set forth herein.

126. Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful and discriminatory conduct and is entitled to damages, injunctive relief, and reasonable attorneys' fees and costs in an amount to be determined by the Court.

### SEVENTH CLAIM FOR RELIEF
**Discrimination in violation of New York State Human Rights Law**
**(New York Executive Law §§ 292 et seq. and the New York Civil Rights Law §§ 40 et seq.)**
**(Against Defendant, COUNTY)**

127. All preceding and subsequent paragraphs are incorporated by reference.

128. The NYSHRL provides that "it shall be unlawful discriminatory practice for any . . . place or provider of public accommodation" to discriminate against a person with a disability either directly or indirectly under N.Y. Exec. Law § 296(2)(a).

129. At all times relevant to this action, Plaintiff suffered from autism spectrum disorder; obsessive compulsive personality disorder; anxiety disorder and major depressive disorder.

130. Plaintiff has a "disability" under N.Y. Exec. Law § 296(21) because he has multiple mental impairments.

131. Defendant COUNTY, and their agency the MCSO, are "persons" as defined by § 296(1), and "places and providers of public accommodation" as defined by § 296(9).

132. The individual defendants are agents and employees of a public accommodation.

133. Defendant COUNTY and all individual defendants unlawfully discriminated against Plaintiff by failing to accommodate his disability during his detention in violation of the NYSHRL.

134. By discriminating against Plaintiff, the COUNTY added an additional layer of punishment, injury, and indignity to the detention processes solely because of Plaintiff's

disability. A person who does not have a disability would not otherwise have experienced this harm.

135. Accordingly, Plaintiff was harmed as a direct result of Defendants' unlawful and discriminatory conduct and is entitled to damages, injunctive relief, and reasonable attorney's fees and costs in an amount to be determined by the Court.

WHEREFORE and in light of the foregoing, Plaintiff demands judgment on all claims for relief:

a. Empanel a jury;

b. Award compensatory and punitive damages;

c. The Plaintiff demands the foregoing relief jointly and severally against all of the defendants in an amount in excess of the jurisdiction of all lower Courts, except that the punitive damages demands are, as a matter of law, not recoverable against a municipality and therefore are not made against the COUNTY;

d. Declare that the Defendants have violated their obligations under the ADA, Section 504, Section 1983 and the NYSHRL;

e. Award Plaintiff reasonable attorney's fees and costs, and interest pursuant to 42 U.S.C. § 1988; and

f. Such other and further relief as the court may deem just and proper.

Dated: New York, New York        Respectfully Submitted,
       November 22, 2021
                                 ROTH & ROTH, LLP.

                                 ~//s//~
                                 _____

Elliot Dolby Shields
Co-counsel for Plaintiff
192 Lexington Avenue, Suite 802
New York, New York 10024
(212) 425-1020

Easton Thompson Kasperek Shiffrin LLP
Donald Thompson
Co-counsel for Plaintiff
16 West Main Street, Suite 243
Rochester, New York 14614
Ph: (585) 423-8290