UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD DZIONARA-NORSEN,

      Plaintiff,

    v.

COUNTY OF MONROE, et al.,

      Defendants.

21-CV-6715-MAV-MJP
DECISION AND ORDER

## INTRODUCTION

On November 22, 2021, Plaintiff Richard Dzionara-Norsen commenced this civil rights action, raising seven claims against the County of Monroe (the "County"), Todd Baxter, Brett Kirkpatrick, and David Gertin (collectively, the "Defendants"). ECF No. 1 at 1. Plaintiff alleges he is an individual with a disability, as known by Defendants, and that while incarcerated at the Monroe County Jail (the "Jail") "he was brutally beaten" by Kirkpatrick and Gertin, both of whom are Deputy Sheriffs with the Monroe County Sheriff's Office ("MCSO"). *Id.* at 1–2. Before the Court is Plaintiff's motion for partial summary judgment on his claims against Kirkpatrick— for excessive force under 42 U.S.C. § 1983, and for assault and battery under New York state law.[1] ECF No. 42; *see* ECF No. 1 at 8–10. Defendants filed a response in

---

[1] These two claims are also asserted against Gertin. ECF No. 1 at 8–10. The claims against Gertin and other Defendants are outside the scope of Plaintiff's motion for partial summary judgment.

1

opposition to Plaintiff's motion, ECF No. 45, and Plaintiff filed a reply, ECF No. 46.[2] The case was transferred to the undersigned on February 10, 2025. ECF No. 49.

For the reasons set forth below, Plaintiff's motion for partial summary judgment is GRANTED.

## BACKGROUND[3]

It is undisputed that a Jail security camera located above the Deputy Desk in the "REC Annex" captured the November 25, 2020 incident which forms the basis of Plaintiff's claims against Kirkpatrick (the "Video"). There is no audio in the Video, and everyone appearing in the video is wearing a medical mask or face covering over their mouths and noses. The parties do not dispute the Video's authenticity or its accuracy. The following facts are taken from the Court's independent review of this video evidence as well as Plaintiff's Statement of Material Facts, ECF No. 42-2 ("Pl. Stmt."), and Defendants' Counterstatement of Material Facts, ECF No. 45-2 ("Def. Stmt."). *See* W.D.N.Y. Loc. R. Civ. P. 56(a)(1)–(2). There are very few disputes of fact, and the Court has noted where the remaining disputes between the parties lie, where the Video is unclear, and where the Video plainly contradicts a party's allegations of what transpired.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts."

---

[2] Plaintiff thereafter filed a motion to supplement briefing on his partial summary judgment motion. ECF No. 47. The Court denied that request as unnecessary in a Text Order on May 30, 2025. ECF No. 50.

[3] The corresponding citation to Defendant's Counterstatement of Material Facts is omitted when their response was "undisputed." Citations to the videotape evidence reference the UTC timestamp on the footage itself.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotation omitted). Where a videotape of the relevant events exists and there are no disputes about its accuracy, a court deciding a motion for summary judgment must "view[ ] the facts in the light depicted by the videotape." *Id.* at 381; *see also Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court on . . . [a motion for judgment as a matter of law[4] if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party."); *Vann by Vann v. City of Rochester*, 747 F. Supp. 3d 566, 569 (W.D.N.Y. 2024*), reconsideration denied*, No. 6:18-CV-06464 EAW, 2024 WL 4750388 (W.D.N.Y. Nov. 4, 2024) ("[T]he Court's factual recitation relies on its own review of the videotape evidence, and not on the gloss thereon provided by either party.")

Plaintiff has autism spectrum disorder and is a person with a disability. Pl. Stmt. at ¶ 1. Plaintiff was incarcerated at the Jail, starting on November 20, 2020, pending sentencing for a criminal conviction. *Id.* at ¶ 2. On November 25, 2020, Gertin and Kirkpatrick were assigned to the REC Annex, where Plaintiff was being held "for constant supervision." *Id.* at ¶¶ 3–4.

## I.    The November 25, 2020 Incident

At approximately 3:54 p.m., Kirkpatrick opened Plaintiff's cell for him to speak with mental health services in the reception area of the Jail. *Id.* at ¶ 6. Plaintiff exited

---

[4] "[T]he standard for granting summary judgment mirrors the standard for judgment as a matter of law, such that the inquiry under each is the same." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000) (quotation omitted).

his cell and told the deputies that he was not going back into his cell until he was able to speak with his mother on the telephone. *Id.* at ¶ 7. Defendants add that Kirkpatrick testified during his deposition that he told Plaintiff "that after he talked to a mental health professional, he could use the phone," and that Plaintiff responded by saying, "fuck you. I'm not going back in the cell." Def. Stmt. at ¶ 36.

The Video does not show Plaintiff's cell, Kirkpatrick outside of it, or the initial exchange between the two of them. At 3:54:11 p.m., the Video shows Gertin in the REC Annex, gesturing to someone offscreen to come towards him. Video at 15:54:11. There were three other people in the REC Annex space at that time: a uniformed officer at the Deputy Desk, a Jail employee with a clipboard sitting on a bench to the left of the open door that Plaintiff eventually walks towards, and another employee in an office on the other side of the open door. *Id.*

Five seconds later, Plaintiff becomes visible on the video, walking quickly past Gertin towards the open door on the other side of REC Annex—towards mental health services. *Id.* at 15:54:16. It is apparent that Gertin speaks to Plaintiff, and Plaintiff stops and turns to respond, seemingly frustrated. *Id.* at 15:54:17–:21. The parties do not dispute that Kirkpatrick and Gertin ordered Plaintiff to return to his cell, but Plaintiff continued to walk towards the reception area. Pl. Stmt. at ¶ 8. Defendants add that Plaintiff continued saying "fuck you" while walking away." Def. Stmt. at ¶ 37. The Video shows Gertin and Plaintiff both making frustrated hand gestures towards the other and shows Gertin stepping closer to Plaintiff. Video at 15:54:18–:24. Plaintiff turns away from Gertin to continue to walk towards the open door, and

Gertin grabs Plaintiff's right wrist with his left hand, causing Plaintiff to stop abruptly and turn back towards Gertin. *Id.* at 15:54:24. The parties do not dispute that Gertin "grabbed [Plaintiff's] wrist and ordered [him] to put his hands behind his back." Pl. Stmt. at ¶ 9. Kirkpatrick is not yet visible in the video, but based on where he comes into frame, Kirkpatrick could have witnessed this interaction from behind Gertin.

Plaintiff "attempted to pull away from Gertin but never raised his fists or attempted to strike Gertin or Kirkpatrick" or otherwise "make a physical threat to harm Gertin." *Id.* at ¶¶ 10–11; Def. Stmt. at ¶ 11. Defendants also add that when Plaintiff "pulled away" from Gertin's wrist-grab, Plaintiff said "don't fucking touch me." Def. Stmt. at ¶ 39. The Video shows Plaintiff shifting his weight back on both feet while trying to pull his right arm out of Gertin's hold and attempting to move towards the open door again. Video at 15:54:25.

In immediate response, Gertin transferred Plaintiff's right wrist from his left hand to his right, forced Plaintiff's right arm behind Plaintiff's back and pushed him up against a nearby wall in front of the open door. *Id.* at 15:54:25–:27. Gertin "pushed" Plaintiff "against the wall to detain and handcuff him." Pl. Stmt. at ¶ 12. Once Gertin pushes Plaintiff up against the wall, Gertin lifts his left leg to step forward and brace his knee against Plaintiff. [5] Video at 15:54:28.

---

[5] Defendants identify that, during his deposition, Gertin testified that once Plaintiff was pushed up against the wall, Plaintiff "pushed out against the wall." Def. Stmt. at ¶40. This account is contradicted by the Video. *See* Video at 15:54:27–:28.

As this is happening, the two non-officer employees in the REC Annex have put more distance between themselves and Gertin and Plaintiff at a non-urgent pace. *Id.* at 15:54:25–:27. One woman backed up farther into the office she was in. *Id.* When Gertin pinned Plaintiff's arm behind his back, the officer at the Deputy Desk got up and started moving towards Gertin and Plaintiff at a brisk, but walking, pace. *Id.* Kirkpatrick on the other hand is seen running towards Plaintiff and Gertin, appearing onscreen after Gertin pins Plaintiff's right arm behind his back but before the front of Plaintiff's body is pushed against the wall. *Id.* at 15:54:27.

Plaintiff's body barely has time to bounce slightly off the wall when Kirkpatrick is upon him, coming from his right side. *Id.* at 15:54:27–:28; *see* Pl. Stmt. at ¶ 13 ("Within one second of Gertin pushing [Plaintiff] into the wall, Kirkpatrick ran over and began punching [Plaintiff] in the right side of his face"). Kirkpatrick immediately punches Plaintiff in the head with such force that both Plaintiff and Gertin, still holding Plaintiff from behind, are knocked to the side. Video at 15:54:28. Kirkpatrick grabs Plaintiff, while Gertin still has a hold on him, and punches Plaintiff in the face three more times in rapid succession, knocking the left side of Plaintiff's head into the side of the open metal door. *Id.* at 15:54:28–:31; *see* Pl. Stmt. at ¶15 (undisputed the door was metal). Both of Plaintiff's shoes come off as a result of Kirpatrick's engagement. Video at 15:54:29. At no point does Plaintiff fight back against Kirpatrick, and at no point could Plaintiff shield his head or face against impact. *Id.* at 15:54:27–:31.

Plaintiff goes to the ground through the open doorway by Kirpatrick, forcing Gertin to release his hold on Plaintiff in the process. *Id.* at 15:54:31. Plaintiff is mostly out of frame once he was forced through the open doorway. *See id.* The officer from the Deputy Desk sat on one of Plaintiff's legs while Kirpatrick and Gertin handcuffed Plaintiff on the ground. *Id.* at 15:54:35–:44.

The only fact as articulated by Plaintiff that Defendants explicitly dispute is the assertion that Plaintiff did not do "anything that a reasonable deputy could interpret as an objectively reasonable threat of physical harm." Pl. Stmt. at ¶ 11. Defendants instead contend that Plaintiff "wasn't complying so his gestures were a threat." Def. Stmt. at ¶ 11.

At the time of the incident, Plaintiff weighed approximately 140 pounds and was 5'9", Gertin weighed approximately 220 pounds and was 5'11", and Kirkpatrick weighed approximately 200 pounds and was 6'2". Pl. Stmt. at ¶ 18. The deputies were each, thus, "much larger" than Plaintiff. *Id.* Plaintiff was transported to Strong Memorial Hospital "where he was treated for facial fractures." *Id.* at ¶ 19.

## II.    Administrative Assessments of the Incident

Jail policy prohibits the unreasonable, unnecessary, and excessive use of force. *Id.* at ¶ 23. In accordance with defensive tactics training, strikes to the face or head are considered a "level three" use of force. *Id.* at ¶ 24. "Immediately after the incident," Kirkpatrick's direct supervisor reviewed the Video and removed Kirkpatrick from his role interacting with the inmate population "because he determined that Kirkpatrick used unreasonable force." *Id.* at ¶ 20. Specifically, the

supervisor stated that "Kirkpatrick failed to properly assess the situation before engaging with [Plaintiff]." *Id.* at ¶ 21.

The supervisor "conducted an investigation into the incident and was able to immediately identify that Kirkpatrick had used excessive force against [Plaintiff]." *Id.* at ¶ 22. The supervisor issued Kirkpatrick a Memorandum of Record, identifying that Kirkpatrick had used unreasonable force and violated Jail Policy MBO 033-10, "Response/Aggression & Subject Management Resistance Report," and he submitted a special report to the Major of Operations, recommending that Kirkpatrick receive remedial training. *Id.* at ¶¶ 25–26. This "special report" was forwarded to Internal Affairs ("IA"), which then conducted its own investigation into the incident. *Id.* at ¶ 27. The IA investigation likewise concluded that the "subject management techniques employed by Kirkpatrick were unreasonable for the situation." *Id.* at ¶ 28.

Defendant Baxter, the Monroe County Sheriff, agreed with IA's findings and disciplined Kirkpatrick by suspending him for 20 days and requiring him to attend additional training. *Id.* at ¶ 32. The County, through its Rule 30(b)(6) witness, admitted that "the force used by Kirkpatrick in striking Plaintiff in the face four times was unreasonable and unnecessary." *Id.* at ¶ 31. Kirkpatrick himself agreed with the findings of the investigations into the incident, admitted that "all four punches were unreasonable and excessive," and accepted the discipline imposed by Sheriff Baxter. *Id.* at ¶¶ 30, 33.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the non-moving party, the court finds that no rational jury could find in favor of that party. *Scott*, 550 U.S. at 380. The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

9

judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

As noted above, because there is a videotape of the incident, and there are no disputes about the Video's accuracy, the Court must view the facts at summary judgment in the light depicted by the Video. *Scott*, 550 U.S. at 380.

## DISCUSSION

Plaintiff seeks summary judgment on his two claims against Kirkpatrick—one for excessive force under federal law, and one for assault and battery under New York state law. New York state law claims for assault and battery are subject to the same standard of review as excessive force claims, and New York's good faith immunity doctrine parallels qualified immunity in excessive force cases. *Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564, 587 (E.D.N.Y. 2013); *see Mesa v. City of New York*, No. 09 Civ. 10464(JPO), 2013 WL 31002, at *27 (S.D.N.Y. Jan. 3, 2013) (where qualified immunity applied to excessive force claim, assault and battery claim "must fail as well"). Therefore, the Court need not separately analyze Plaintiff's assault and battery claim against Kirkpatrick and proceeds with its excessive-force analysis.

## I.    Excessive Force

Because he was a presentence detainee, Plaintiff's federal § 1983 claim against Kirpatrick for excessive force arises under the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Little v. Cnty. of Nassau*, 708 F. Supp. 3d 252, 262–63 (E.D.N.Y. 2023). To prevail on a claim of excessive force when the force is "purposefully or knowingly" used against a pretrial or presentence detainee, such as

10

here, the detainee must show only that the force "was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015) (explaining the "objective reasonableness" test for excessive force claims under the Fourth Amendment likewise applies to claims under the Fourteenth Amendment). "A determination of whether the force used was reasonable 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Lennox v. Miller*, 968 F.3d 150, 155 (2d. Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Kirkpatrick's actions in punching Plaintiff in the face four times in rapid succession, causing his head to slam into a metal door, less than one second after Gertin had Plaintiff up against a wall with his right arm pinned behind his back and braced against Gertin's left knee was objectively unreasonable and excessive as a matter of law. The summary judgment record is replete with undisputed evidence foreclosing any genuine dispute that Kirkpatrick used excessive force. Moreover, the depiction of the incident in the Video speaks for itself. Kirkpatrick's supervisor "immediately" concluded that Kirkpatrick used excessive force against Plaintiff. The IA investigation concluded that "subject management techniques employed by Kirkpatrick were unreasonable for the situation"—a conclusion that Defendant Sheriff Baxter agreed with, resulting in disciplinary action against Kirkpatrick. The County's 30(b)(6) witness admitted "the force used by Kirkpatrick in striking Plaintiff

in the face four times was unreasonable and unnecessary," and Kirkpatrick himself admitted that "all four punches were unreasonable and excessive." The Video provides clear confirmation of the unreasonableness of what transpired.

## II.    Qualified Immunity

"The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317–18 (2d Cir. 1994). Qualified immunity is an affirmative defense for which Kirkpatrick would bear the burden of proof at trial. *Dunkelberger v. Dunkelberger*, No. 14-CV-3877 KMK, 2015 WL 5730605, at *6 (S.D.N.Y. Sept. 30, 2015).

"'In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]' . . . The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Felix v. City of New York*, 408 F. Supp. 3d 304, 308 (S.D.N.Y. 2019) (quoting *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014)) (alterations in original)). Said differently, if the officer's conduct violated a right, the Court must analyze the objective reasonableness of the officer's belief in the lawfulness of his actions. *Loria v. Gorman*, 306 F.3d 1271, 1282 (2d Cir. 2002). If the officer reasonably believed that his actions did not violate

12

plaintiff's rights, he is entitled to qualified immunity even if that belief was mistaken. *Id.* An officer's subjective beliefs and motivations are irrelevant. *Read v. Town of Suffern Police Dep't*, No. 10 CIV. 9042 JPO, 2013 WL 3193413, at *4 (S.D.N.Y. June 25, 2013). Instead, courts determine only whether a jury could find that "'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

As to the first prong, Kirkpatrick argues that summary judgment is inappropriate because special interrogatories must be submitted to a jury to establish the underlying facts, for example, whether Plaintiff was detained at the time of the use of force and whether Plaintiff posed a threat to officer safety. *See* ECF No. 45 at 5–7. Special interrogatories are only needed, however, "[i]f there is a dispute as to the material facts." *Zellner*, 494 F.3d at 368. ("Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court."). No genuine dispute exists here.

As discussed above, the summary judgment record clearly demonstrates that Kirkpatrick violated Plaintiff's right to be free from the use of excessive force against him. Kirkpatrick himself admitted he used excessive force. Viewing the facts in the light depicted by the videotape, as the Court must in this case, no reasonable jury could find that Plaintiff was resisting or posing a threat to officer safety to a degree that would justify the force used by Kirkpatrick, assuming the jury could find

Plaintiff was resisting or threatening officer safety at all, at the time Kirkpatrick started striking him. Kirkpatrick's attempt to create "metaphysical doubt" as to whether Plaintiff was detained or whether he posed a threat does not impact the conclusion compelled by the largely undisputed facts, which overwhelmingly show that excessive force was used in violation of Plaintiff's Fourteenth Amendment rights. *See Robinson*, 781 F.3d at 44; *Anderson*, 477 U.S. 247–48; *see also Jones v. Treubig*, 963 F. 3d 214, 230 (2d Cir. 2020) (issued June 26, 2020) (officer not entitled to qualified immunity for administering a second tasing when plaintiff was "subdued face down, arms spread").

Turning to the second prong, no reasonable officer could believe that Kirpatrick's use of force was legal given the circumstances. It was clearly established, well before the November 2020 incident, that it would violate the Fourteenth Amendment to repeatedly punch a presentence detainee in the face while the detainee was facing a wall with one arm pinned behind his back, after the detainee was non-compliant with officers' orders and attempted to pull away from an officer, but had never raised his fists or attempted to strike an officer or otherwise make a physical threat of harm. *Compare, e.g., Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 343 (E.D.N.Y. 2006) ("[A] reasonable officer should have known that repeatedly striking a subdued suspect violates a clearly established constitutional right not to be subjected to excessive force during arrest."); *Jones*, 963 F.3d at 225 ("Before the incident at issue here in April 2015, it was clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against

14

an arrestee who is no longer resisting and poses no threat to the safety of officers or others."); *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (denying summary judgment to officer who allegedly shoved a handcuffed arrestee headfirst into a police car, causing her to strike her head on a part of the car), *with, e.g., Torres v. Dennis*, No. 10-CV-0803 JS AKT, 2013 WL 2898142, at *4 (E.D.N.Y. June 13, 2013) (officer entitled to qualified immunity when he punched plaintiff and hit him with a flashlight when plaintiff "had been actively resisting arrest and [was] essentially putting up a physical fight with the officers"); *Felix*, 408 F. Supp. 3d at 311 (officer entitled to qualified immunity for an "intentional head slam and chokehold" in response to plaintiff's physical altercation with two officers in which they "were evenly matched" and that posed a "potentially serious and imminent risk" to officer safety while plaintiff was being arrested for "serious offenses, robbery and assault"). There is no other way to describe Kirkpatrick's use of force in this case except as gratuitous and unreasonable.

*Pierre-Antoine v. City of New York* is particularly illustrative. No. 04 CIV. 6987 (GEL), 2006 WL 1292076 (S.D.N.Y. May 9, 2006). The district court concluded that an officer was not entitled to qualified immunity at summary judgment because if plaintiff's account was credited, "a reasonable officer would have known that repeatedly punching, kicking, and stomping on [plaintiff] violated a clearly established constitutional right not to be subjected to excessive force during arrest." *Id.* at *6. The court reasoned:

> The fact that [plaintiff] carried a cane sword does not alter this conclusion, primarily because defendant [officer] had already taken the

cane sword from [plaintiff] by the time the struggle began. Nor is [plaintiff's] conceded resistance to arrest conclusive. Given that several officers were present and available to assist with the arrest[.]

[Plaintiff's] resistance (which on his account was modest and largely passive) should not have made his arrest so difficult that reasonable officers would believe that the law permitted them to repeatedly punch, kick and stomp on plaintiff in the manner and to the extent that plaintiff alleges, especially considering that [plaintiff] (1) was already pinned face down on the ground when the officers were striking him, (2) repeatedly told them that he was disabled and in pain, and (3) did not attempt at any point to strike the officers back.

*Id.* Here, where Plaintiff is the movant at summary judgment, the relevant facts are largely undisputed, and the facts must be viewed in the light depicted by the Video, Kirkpatrick is, as a matter of law, not entitled to qualified immunity. It was clearly established that any resistance that may have been occurring after Gertin engaged Plaintiff—which was not notable enough to by detected by the Video—would not have made his handcuffing so difficult that reasonable officers would believe that the law permitted them to repeatedly punch Plaintiff in the head in the manner and to the extent that is depicted on the Video, especially given that Plaintiff (1) was already pinned up against the wall with one arm restrained behind him, (2) had committed only the offense of swearing at the officers and being non-compliant with their directive to return to his cell, (3) did not attempt at any point to become physically aggressive with the officers who were "much larger" than him, and (4) given that a third officer was close by as well.

Within the facts of this case itself, every supervisory entity to weigh in on the matter concluded that Kirkpatrick's behavior was illegal. It is undisputed that Kirkpatrick's direct supervisor concluded this "immediately" after viewing the Video.

16

Additionally, the Video not only clearly shows the incident, but shows that Kirkpatrick's response was orders of magnitude different from the other three people witnessing Gertin's interaction with Plaintiff. The other officer responded to Gertin pinning Plaintiff's arm behind his back by getting up and briskly walking across the REC Annex to assist, and the two non-officers witnessing Gertin's interaction with Plaintiff started backing away at a non-urgent pace. Meanwhile, Kirpatrick ran over and immediately struck Plaintiff in the face, knocking both Plaintiff and Gertin to the side, and then struck Plaintiff again three more times in rapid succession. No reasonable officer could believe that such force comported with Plaintiff's constitutional rights

## CONCLUSION

For the forgoing reasons, Plaintiff's motion for partial summary judgment is GRANTED because he has demonstrated that there are no genuine disputes of fact and that he is entitled to judgment as a matter of law on his claims of excessive force and state law assault and battery against Kirkpatrick.

## ORDER

IT IS HEREBY ORDERED that Plaintiff's motion for partial summary judgment, ECF No. 42, is GRANTED; and it is further

ORDERED that the Clerk of Court shall enter judgment against Defendant Kirkpatrick on Plaintiff's claim of excessive force under 42 U.S.C. § 1983 and his claim of assault and battery under New York state law.

SO ORDERED.

17

Dated:    July_____, 2025
          Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge